John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel (702) 853-5490
Fax (702) 227-1975
jaldrich@johnaldrichlawfirm.com

Thomas H. Mitchiner *(pro hac vice to be submitted)*
Colorado Bar Number: 47465
Mitchiner Law, LLC
1240 S. Parker Rd. Suite 103
Denver, CO 80231
720-538-0371
Email: tmitchiner@mitchinerlawllc.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KIMBERLY DILLION, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN NEVADA HEALTH DISTRICT,<br>a Political Subdivision of the State of Nevada,<br><br>Defendant | Case No.:<br><br><br>**COMPLAINT**<br>**JURY DEMAND** |

Plaintiff Kimberly Dillion, through her counsel, John P. Aldrich, Esq., of the Aldrich Law Firm, Ltd., and Thomas Mitchiner, of Mitchiner Law LLC, submits her Complaint and Request for Jury Trial, asserting claims against Defendant, Southern Nevada Health District, and states as follows:

This action is an employment discrimination case. Kimberly Dillion ("Dillion") alleges Defendant intentionally discriminated against her in employment, based on her disability, failed to accommodate her disability, and retaliated against her for engaging in protected activity in

1

violation of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Amendments Act of 2008, as amended, 42 U.S.C. § 12101, et. seq., and the Rehabilitation Act of 1973 as amended, 29 U.S.C. 701, et seq. (collectively referenced as the ADA). Further, Dillion alleges that Defendant intentionally discriminated against her based on her age and retaliated against her in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA").

## I. Parties

1.      Dillion is a disabled female over 40 years old.

2.      Dillion suffers from asthma, anxiety, panic attacks, obsessive-compulsive disorder, and phobia.

3.      Dillion's disabilities impact her ability to wear a mask, breathe, think, concentrate, and her ability to deal with being unable to breathe.

4.      Southern Nevada Health District ("SNHD") is a health district authorized under Nevada Revised Statute Chapter 439 and an employer in the State of Nevada.

5.      At all times relevant to the actions complained about in this complaint Dillion was a resident of the state of Nevada.

6.      Dillion performed work for Defendant in Nevada in the judicial district of this Court.

7.      SNHD conducts business in the judicial district of this Court.

8.      SNHD employs over 15 persons.

## II. Jurisdiction and Venue

9.      Jurisdiction is proper under the ADA and the ADEA.

10.     Dillion was an employee of SNHD as defined by the ADA and the ADEA.

11.     SNHD was an employer as defined by the ADA and the ADEA.

2

12.  This court has jurisdiction over Dillion's claims under 28 U.S.C. § 1331.

13.  Venue is proper in this Court under 28 U.S.C. § 1391(b) (c), because all the events that give rise to this claim occurred in Nevada.

### III. Administrative Procedures

14.  Before filing this action, Dillion timely, properly, and lawfully exhausted all required administrative procedures and remedies.

15.  Dillion filed a timely charge of unlawful disability and age discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). (EEOC Charge No. 34B-2021-00760.)

16.  On August 29, 2022, the EEOC mailed a Notice of Right to Sue letter to Dillion.

17.  This action is timely filed because it is filed within ninety days of September 2, 2022, the date Dillion received the Notice of Right to sue letter issued by the EEOC.

### IV. General Allegations

18.  Dillion started working for SNHD on May 15, 2017, as an Environmental Health Specialist II ("EHS"), in the Environmental Health Division ("EHD").

19.  SNHD terminated Dillion on January 13, 2021.

20.  Dillion's duties involved inspecting restaurants in person.

21.  SNHD paid Dillion approximately $31.00 per hour for this work.

22.  Dillion worked on the Spring Valley team of approximately 10 Health Inspectors.

23.  At the time of her termination on January 13, 2021, Dillion was 56 years old.

24.  In March 2020, the COVID-19 pandemic hit the United States.

25.     Shortly before the pandemic started, Dillion and her coworkers in the EHD were instructed to work remotely (from home or another remote location) for about two hours per workday to accomplish administrative duties.

26.     SNHD had already provided the employees with a laptop computer, an SNHD-issued smartphone, and a password for a virtual private network.

27.     Dillion paid for her high-speed internet at home that she used for syncing her work laptop remotely to the SNHD network for all necessary field work and remote duties.

28.     Because of the pandemic, SNHD needed many Contact Tracers to determine the spread of COVID-19.

29.     SNHD had re-assigned some of Dillion's coworkers to work as full-time Contact Tracers, which took them away from their field inspections.

30.     SNHD did not select Dillion for the Contract Tracing duties.

31.     Contact Tracers were initially trained at the SNHD Main Office at 280 N. Decatur Blvd, Las Vegas, but later worked remotely (some employees worked from home) and called the individuals they needed to speak with.

32.     Dillion's colleagues were paid at their regular EHS rate, encouraged to work overtime, and afforded many hours of overtime pay.

33.     Contact tracing did not involve any person-to-person contact.

34.     SNHD encouraged EHS's to maintain a strong environmental health presence in the community for the restaurants that remained open and operational for to-go orders, pick-up, delivery, and other approved operations.

35.     Dillion conducted fieldwork, including COVID outreach and risk-based inspections, through the end of March into April, when masks were mandated, in May, and in June 2020.

36.     Wearing a mask exacerbated all of Dillion's disabilities.

37.     Wearing a mask made it difficult for her to breathe, triggering either an asthma attack or a panic attack.

38.     Moreover, wearing the mask triggered Dillion's phobia to the point where she could not function.

39.     Sometime in April-May 2020, after learning about the mask requirement and her issues with wearing a mask, Dillion made an informal request to her immediate supervisor, Carol Culbert, an Environment Health Supervisor, to be transferred to a Contract Tracer position.

40.     Ms. Culbert said they had been filled, but she would note the request.

41.     At the time, newer, younger employees were working as Contact Tracers.

42.     Michelle Guzman, Stephanie Hernandez, and Nicole Grandt were non-disabled Environmental Health Specialists that worked in contact tracing from March 2020 onward.

43.     Later, Dillion learned that Thomas San Nicolas, an employee younger than her and not disabled, was allowed to transfer to a contract tracing position.

44.     All EHD employees re-assigned to contact tracing duties were paid at their regular EHS wages.

45.     From April to June 2020, Dillion attempted to perform her field duties as a health inspector, but wearing a mask continued to trigger her asthma and mental health issues.

46.     Wearing a mask was detrimental to Dillion's health.

47.     On Thursday, June 4, 2020, Dillion started to think she was having a heart attack.

5

48.     Dillion went to the emergency room. Dillion did not have a heart attack but did suffer asthma and panic attacks. Dillion was released from the hospital on June 5, 2020.

49.     On June 9, 2020, Dillion reached out to Susan Damitz, a Human Resources Analyst with SNHD, to inquire about going on Family Medical Leave Act ("FMLA") leave.

50.     On June 11, 2020, Dillion emailed Ms. Culbert to inform her about her hospital visit and her request for FMLA paperwork.

51.     Dillion also asked Ms. Culbert if EHD had any positions available that she could perform without wearing a mask.

52.     Instead of handling Dillion's requests, Ms. Culbert referred her to human resources.

53.     After emailing Ms. Culbert, Dillion met with Ms. Damitz to discuss her medical symptoms.

54.     In the meeting, Dillion asked if SNHD could reassign her to a position that did not require her to wear a mask.

55.     Ms. Damitz told Dillion she could not go into another position and suggested that Dillion take disability retirement.

56.     Ms. Damitz called the retirement office while Dillion was meeting with her.

57.     After the meeting, Ms. Damitz gave Dillion FMLA paperwork.

58.     That same day Dillion contacted the Job Accommodation Network ("JAN") about her rights as a disabled person. JAN informed her about her right to request accommodations.

59.     On June 15, 2020, Dillion requested Ms. Culbert for SNHD to accommodate her disability by allowing her to perform inspections without a mask.

60.     After Dillion emailed Ms. Culbert, she emailed Ms. Damitz and proposed two accommodations; (1) be allowed to perform inspections without a mask or (2) be allowed to perform inspections with a face shield and not a mask.

61.     On June 18, 2020, SNHD approved Dillion's request to use a face shield, not a mask, while working in the field.

62.     Dillion used the face shield but continued to have asthma symptoms, shortness of breath, anxiety, and panic attacks.

63.     On June 27, 2020, Dillion's Primary Care Physician ("PCP") submitted a "Medical Inquiry Form in Response to an Accommodation Request" for Dillion.

64.     In the document, he wrote, "she is unable to do her current job with a mask on. I suggest finding her a position like a desk job in a private office as she can work without a mask. Maybe a contact tracer."

65.     That same day Dillion submitted her FMLA paperwork. SNHD approved Dillion's FMLA.

66.     Dillion's FMLA leave was scheduled to end on September 18, 2020, the day she would have used the 12 weeks available.

67.     SNHD's mask requirement was still in effect on October 8, 2020.

68.     Because Dillion could not comply with the mask requirement, she continued the interactive process she had started in June 2020 with SNHD.

69.     On October 22, 2020, Dillion met with Angela Lewis, a human resources representative, and Regena Ellis, a union representative, to discuss her accommodation requests.

70.     In the meeting, Dillion again requested to be placed in a Contact Tracer position; SNHD denied this request.

71.    Dillion also asked to be placed in a position that did not require her to wear a mask; SNHD rejected this request.

72.    Angela Lewis denied several times that there was any work in the EHD that Dillion could perform remotely.

73.    Dillion later became aware of two areas where SNHD needed help, food label reviews and Hazard Analysis Critical Control Point ("HACCP") Plans.

74.    Dillion was qualified to perform both roles, and neither would have required her to wear a mask or meet face-to-face with the public, and both would have helped SNHD.

75.    On December 17, 2020, Dillion met with the same parties to discuss accommodations.

76.    Dillion renewed her request to be placed in a different role. SNHD denied the request again.

77.    In the meeting, it was decided that Dillion would purchase a different type of face shield, a "bottom-up" face shield, to see if she could use it for work instead of a mask or a regular face shield.

78.    Dillion went to purchase the "bottom-up" face shield immediately but could not because it was on backorder.

79.    On December 23, 2020, Dillion received an email from Amy Hagan, SNHD's director of human resources, regarding a Notice of a Pre-disciplinary Meeting.

80.    On January 6, 2021, Dillion had her Loudermill Pre-termination Hearing. On January 13, 2021, SNHD terminated Dillion.

81.     Later Dillion learned that SNHD had allowed three disabled female employees in their 20s and 30s to work full-time remotely (and were not required to do restaurant inspections) without exhausting FMLA and did not terminate these employees.

## V. Claims for Relief

### First Claim

### (Disability Discrimination – ADA)

82.     Dillion incorporates and restates all allegations all prior allegations in this Complaint.

83.     This claim is for discrimination based on disability under the ADA.

84.     Dillion, as a disabled individual, is in a protected class under ADA.

85.     Dillion suffers from asthma, anxiety, panic attacks, obsessive-compulsive disorder, and phobia.

86.     Dillion's asthma, anxiety, panic attacks, obsessive-compulsive disorder, and phobia substantially impact her major life activities such as breathing, wearing a mask, and dealing with the feeling of being unable to breathe.

87.     Dillion's asthma can cause her to have panic attacks. When Dillion has a panic attack Dillion cannot perform any major life activities.

88.     SNHD knew about Dillion's disabilities.

89.     Dillion satisfactorily performed all her duties.

90.     SNHD discriminated against Dillion by: (1) not assigning her to a Contact Tracer position, (2) not assigning her to a position that would not require contact with the public and wearing a mask; (3) not allowing her to wear a mask other than a face mask, and (4) terminating her employment.

91.     SNHD allowed other employees similarly situated to Dillion but not of Dillion's protected class to work as Contract Tracers.

92.     SNHD allowed other employees similarly situated to Dillion but not of Dillion's protected class to work in positions that did not require them to wear a mask.

93.     By the conduct described above, SNHD intentionally deprived Dillion of the same rights and working conditions, as employees not in the ADA protected class, in the performance, enjoyment, continuation, and all the benefits and privileges of her employment relationship with SNHD, in violation of ADA.

94.     SNHD engaged in direct, continual, increasing, and intentional disability discrimination in taking adverse unlawful employment practices against Dillion because of her protected under the ADA.

## SECOND CLAIM

### (Failure to Accommodate – ADA)

95.     Dillion incorporates and restates all allegations all prior allegations in this Complaint.

96.     Dillion asserts a claim for the denial of her requested accommodation under the ADA.

97.     The ADA forbids discrimination against a "qualified individual on the basis of disability." 42 U.S.C. Section 12112(a).

98.     Prohibited discrimination includes not making reasonable accommodations, 42 U.S.C Section 12112(b)(5)(A).

99.     The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. Section 12102(1)(A).

10

100.     Dillion is a qualified individual with a disability.

101.     Defendant denied Dillion's requests for a reasonable accommodation in the form of (1) transferring her to a Contact Tracer position, (2) transferring her to a position where she did not have to wear a mask, (3) allowing her to wear a face mask that would not exacerbate her disabilities.

102.     Defendant cannot meet its burden to demonstrate that Dillion's requested accommodation would have imposed an undue hardship on Defendant. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9

103.     At all times herein, Dillion was a qualified person with a disability under the ADA.

104.     Defendant knew of Dillion's disabilities and her requests for a reasonable accommodation.

105.     Defendant unreasonably failed to provide Dillion the reasonable accommodation.

106.     Defendant's refusal to provide reasonable accommodations in issue to Dillion constitutes intentional, willful, and unlawful disability discrimination in violation of the ADA.

## THIRD CLAIM

### (Age Discrimination – ADEA)

107.     Dillion incorporates and restates all allegations and all prior allegations in this Complaint.

108.     At all times in issue, Dillion performed her duties in a satisfactory manner.

109.     At all times in issue, Dillion did not engage in any conduct warranting the discriminatory adverse actions described herein.

110.     SNHD discriminated against Dillion because of her age by intentionally depriving Dillion of her right to be free from age discrimination in the performance, enjoyment,

continuation, rights, benefits, and privileges of her employment relationship with the SNHD, in violation of 29 U.S.C. § 623(a)(1), (2).

111.    The ADEA applies to SNHD and Dillion.

112.    SNHD discriminated against Dillion because of her age: (a) with respect to her compensation, terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Dillion in a way, which deprived, or tended to deprive, Dillion of employment opportunities, or otherwise adversely affect her status as an employee.

113.    SNHD engaged in continual, increasing, and intentional age discrimination in taking adverse unlawful employment practices against Dillion because of her age.

114.    Specifically, SNHD did not provide Dillion with the same opportunities to work as a Contract Tracer, and to work in a position that did not require contact with the public, that it provided to younger similarly situated employees.

115.    SNHD treated Dillion differently than similarly situated employees because of her age with respect to the opportunities provided to them to work in positions that did not require contact with the public.

116.    SNHD acted willfully, with malice or reckless indifference to the rights of Dillion.

117.    As a result of SNHD's actions, Dillion suffered damages in an amount to be proved at trial.

## FOURTH CLAIM

### (Retaliation – ADA)

118.    Dillion incorporates and restates all allegations and all prior allegations in this Complaint.

119.     Dillion asserts a claim of unlawful retaliation in violation of the ADA. 42 U.S.C. Section 12203(a).

120.     The ADA prohibits Defendant from unlawful retaliation and discrimination against Dillion because she engaged in activities protected by the ADA. 42 U.S.C. Section 12203(a)

121.     The ADA prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA. 42 U.S.C. Section 12203(a).

122.     Dillion engaged in protected activities under the ADA by repeatedly requesting Defendant to provide her a reasonable accommodation as described above.

123.     From June 15, 2020, through January 13, 2021, the date of Dillion's termination, she made many requests for reasonable accommodation in the form described above.

124.     On or about June 27, 2020, Dillion's doctor informed Defendant of her need to work in a position that does not require her to wear a mask.

125.     From June 15, 2020, through her termination on January 13, 2021, she had multiple conversations with Defendant in which she discussed her need to work in a position that does not require her to wear a mask.

126.     Defendant knew of Dillion's protected ADA activities.

127.     Defendant engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation against Dillion.

128.     Defendant's intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Defendant officials, managers, and employees.

129.    Defendant, contemporaneously with, and/or immediately after, Dillion's repeated, protected activities, took actions against her that a reasonable employee would have found materially adverse.

130.    Defendant retaliated against Dillion by subjecting her to a series of intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions, resulting in her termination.

131.    Defendant terminated Dillion's employment on January 13, 2021.

132.    A causal connection, and/or but-for causation exists between Dillion's protected activities and the unlawful materially adverse employment actions taken by Defendant against Dillion.

133.    Defendant's treatment of Dillion, considered in its totality and in a cumulative manner, as stated in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, materially adverse, retaliatory, and discriminatory actions prohibited by the ADA.

## **FIFTH CLAIM**

### **(Retaliation – ADEA)**

134.    Dillion incorporates and restates all allegations and all prior allegations in this Complaint.

135.    From June 15, 2020, through January 13, 2021, Dillion engaged in protected activity by participating in many meetings concerning her ability to work in a position that does not require her to wear a mask, which Defendant allowed younger similarly situated employees to Dillion work in.

136.    Dillion's last meeting with Defendant was on December 17, 2020.

14

137.   Defendant informed Dillion that it did not have any positions for her that did not require her to wear a mask.

138.   Later Dillion learned that SNHD allowed three similarly situated employees younger than Dillion to work fully remote as EHS's.

139.   On January 13, 2021, SNHD terminated Dillion's employment.

140.   SNHD terminated Dillion for her engaging in protected activity in violation of 29 U.S.C. § 623(d).

141.   A casual connection exists between Dillion's participation in protected activity and her termination because her termination occurred within one month of her last protected activity.

142.   A reasonable employee would have considered Dillion's termination for participating in discussions about positions she can perform as being materially adverse.

143.   SNHD acted willfully, with malice or reckless indifference to the rights of Dillion.

144.   As a result of SNHD's actions Dillion suffered damages in an amount to be proved at trial.

## VI. Relief Requested

145.   Wherefore, Plaintiff, Kimberly Dillion, respectfully requests this Court to enter judgment in Kimberly Dillion's favor and against the Southern Nevada Health District, on all claims and to award the following remedies:

    a.   To enter a judgment for Dillion and against SNHD, finding SNHD's actions constitute unlawful intentional discrimination based on disability in violation of the ADA.

    b.   To enter a judgment for Dillion and against SNHD, finding SNHD's actions in

failing to reasonably accommodate Dillion violated the ADA.

c.  To enter a judgment for Dillion and against SNHD, finding SNHD's actions constitute unlawful intentional discrimination based on age in violation of the ADEA.

d.  To enter a judgment for Dillion and against SNHD, finding SNHD's actions constitute unlawful retaliation in violation of the ADA.

e.  To enter a judgment for Dillion and against SNHD, finding SNHD's actions constitute unlawful retaliation in violation of the ADEA.

f.  To enter a judgment for Dillion and against SNHD, finding SNHD's actions constitute a willful violation of the ADA and ADEA.

g.  To award Dillion, the remedies of damages for back pay, restored benefits, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled.

h.  To award Dillion, compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which she is entitled.

i.  To award Dillion punitive damages.

j.  To award Dillion liquidated damages.

k.  To award Dillion attorney fees and costs.

l.  To award Dillion pre-judgment and post-judgment interest at the appropriate rate provided by law.

m.  To direct SNHD to take such affirmative relief steps as are necessary to ensure

16

that the effects of SNHD's unlawful employment practices are eliminated and do not continue to affect Dillion's employment opportunities.

n. Order Defendant to reinstate Dillion to employment or in lieu of reinstatement, award Dillion front pay.

o. To award Dillion all other legal and equitable relief, to which Dillion is entitled under any law, this Court deems just, equitable, and proper.

## <u>JURY TRIAL REQUEST</u>

Under Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. § 1981a(c)(1), the ADA, the ADEA and all laws providing for a right to trial by jury, Dillion seeks a jury trial of all claims and issues.

Dated: November 22, 2022

**ALDRICH LAW FIRM, LTD.**

/s/ John P. Aldrich
John P. Aldrich, Esq.
Nevada Bar No. 6877
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel (702) 853-5490
Fax (702) 227-1975
jaldrich@johnaldrichlawfirm.com

Thomas H. Mitchiner *(pro hac vice to be submitted)*
Mitchiner Law, LLC
1240 S. Parker Rd. Suite 103
Denver, CO 80231
Telephone: 720.538.0371
Email: tmitchiner@mitchinerlawllc.com

*Attorneys for Plaintiff*